[Cite as *State v. Letner*, 2011-Ohio-3732.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24277 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-1022 |
| v. | : | |
| | : | |
| DALE M. LETNER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 29th day of July, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LAURA M. WOODRUFF, Atty. Reg. #0084161, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ADRIAN KING, Atty. Reg. #0081882, Adrian King Law Office, LLC, 36 North Detroit Street, Suite 104, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

Defendant-appellant Dale M. Letner appeals from his conviction and sentence, following a no-contest plea, for Having a Weapon While Under a Disability. Letner contends that the trial court erred when it overruled his motion to suppress evidence he claims was

obtained by an unlawful search and seizure.

We conclude that there is evidence in the record from which the trial court could find that the evidence was found in plain view, after a police officer removed Letner from a motor vehicle, following an investigatory stop supported by reasonable, articulable suspicion. Accordingly, the judgment of the trial court is Affirmed.

I

The facts were found by the trial court, as follows:

"At approximately 7:30 p.m., on April 4, 2010, City of Dayton Police Officer Michael Wolpert and his partner Officer Holly Bruss, both uniformed officers and riding in a marked cruiser, were on routine patrol on the east side of Dayton. Officer Wolpert, the driver, had 12 years experience, while Officer Bruss, the passenger, had 3 years experience on the police force.

"As the officers drove along the area of Clover and Steele Avenue near Dover, they observed a white minivan in the alley behind a known drug house located at 538 Steele Avenue. (Officer Bruss had, personally, made a drug arrest at that location in the recent past.) The officers turned their vehicle around and went down the alley in the opposite direction. The police cruiser pulled in front of the minivan and stopped. The evidence revealed the cruiser may have made it difficult for the driver of the minivan to pass.

"As they approached the parked minivan, Officer Wolpert, the driver of the cruiser, stated that he observed the Defendant who was the passenger in the minivan dip his shoulders down and up, making what he called furtive movements. Based upon his observation of the 'furtive movements,' and seeing the vehicle parked behind a known drug house located in a

high crime area where the police had previously made many arrests for drugs, assaults, rapes, prostitution, and gun possession, the officers decided to approach the vehicle.

"It was later noted that drug buyers in this area often park behind the drug house and place their orders via cell phone. The buyers then drive to the front of the house and pick up their order.

"Officer Wolpert approached the vehicle and made contact with the passenger while Officer Bruss made contact with the driver. As Wolpert approached the Defendant, there were no other furtive movements. Wolpert asked Letner to provide identification; he complied. Because of the suspected furtive movements, Wolpert asked Letner to leave the vehicle; again the Defendant complied. As the vehicle door opened, the officer observed a handgun in plain view; however, it appeared that Letner did not realize that the officer had made that observation.

"Wolpert stated that he had Letner sit in his cruiser so that he could confirm the Defendant's identifiers and then he retrieved the gun. * * * * "

There is evidence in the record to support these findings.

To the foregoing, we would only add the following:

Officer Bruss actually testified that she had made drug arrests, in the plural, at the end of March, "just a few weeks before this incident."

The officers testified that there was room in the alley for the parked minivan to have passed by the cruiser to exit the alley. Letner, himself, testified:

"Q. Wait a minute. Where was the officers [sic] parked?

"A. Oh, in front of the vehicle.

"Q. Okay. Could you have gone around the car? Could your car have gone around the –

"A. Yeah.

"Q. Did you think you were free to go around?

"A. I mean we could've.

"Q. But did you feel free to do it?

"A. No."

Officer Wolpert gave the following testimony concerning the furtive movement he observed and his conclusions therefrom:

"Q. So, once you saw the motion by the defendant in the passenger seat, what was your response?

"A. I've been doing this for 12 years. I've worked the west side of Dayton for 10 years. I worked [Dayton Metropolitan Housing Authority] for almost three years. It's very common that when people see us and if they have something on them that they're trying to conceal from us, that they make movements towards the floorboard of a vehicle; for instance, to hide their weapons or guns."

Letner was arrested and charged with Having a Weapon While Under a Disability and Improper Handling of a Firearm in a Motor Vehicle. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, his motion to suppress was overruled.

Letner then pled no contest to Having a Weapon While Under a Disability, and the State dismissed the Improper Handling charge. Letner was convicted and sentenced

accordingly.   From his conviction and sentence, Letner appeals.

II

Letner's sole assignment of error is as follows:

"THE TRIAL COURT ERRED WHEN IT FOUND THE EVIDENCE OBTAINED WAS LEGALLY SEIZED UNDER THE PLAIN VIEW DOCTRINE."

Although Letner frames his assignment under the plain-view doctrine, he does not contest that the firearm was in plain view of Officer Wolpert once he exited the minivan.   He contends that there was no basis for the stop, so that Wolpert was not lawfully in position to observe the firearm.   Of course, if the stop was unlawful, the finding and the seizure of the firearm would be fruit of the forbidden tree in any event.   The dispositive issue is the propriety of the stop.

A brief, investigative stop does not require as much probability of criminal activity as the probable cause required for an arrest.   *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.   Because the extent of the intrusion upon a suspect's protected liberty interests is less in a brief, investigative stop, the amount of suspicion required to justify that intrusion is correspondingly less.   Only a reasonable, articulable suspicion of criminal activity is required.

In *Terry*, a veteran police officer observed two men in the middle of the afternoon, in downtown Cleveland, not in a high-crime area, walking back and forth in front of a store. Based upon his years of experience, the officer suspected that the men were casing the store with a view to robbing it.   He stopped them, and frisked one of them for weapons.   The United States Supreme Court held that the police officer had a reasonable, articulable suspicion, based upon his observation and experience, that justified an investigative stop.

In the case before us, officers Wolpert and Bruss, based upon their experience – Wolpert's extending over a dozen years, Bruss's over not so long, but as recently as "just a few weeks" ago – developed a suspicion that the men in the minivan were there in the alley to buy drugs from the drug house they were behind. Wolpert, who was going to approach Letner's side of the minivan, and was therefore focusing on Letner, saw Letner make a movement that Wolpert associated, based upon his training and experience, with placing contraband – possibly a weapon – on the floor of a vehicle in response to an approaching police officer.

While these observations fall short of probable cause for an arrest, they support a reasonable and articulable suspicion of criminal activity, when evaluated by police officers with relevant training and experience.

Under these circumstances, Wolpert was justified in asking Letner to exit the minivan. *State v. Evans* (1993), 67 Ohio St.3d 405, 407, citing *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 337.

Once Letner opened the passenger-side door of the minivan and stepped out, the firearm was in plain view, on the floor of the van, between the seat and the doorframe. It was then subject to seizure. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

Letner's sole assignment of error is overruled.

### III

Letner's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:


Mathias H. Heck
Laura M. Woodruff
Adrian King
Hon. Frances E. McGee