[Cite as *State v. Karsikas*, 2020-Ohio-5058.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2020-A-0017** |
| GARY ARVID KARSIKAS, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2019 CR 00147.

Judgment: Affirmed.

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}  Defendant-appellant, Gary A. Karsikas, appeals his convictions for Tampering with Evidence, Aggravated Possession of Drugs, and Obstructing Official Business.  For the following reasons, we affirm Karsikas' convictions.

{¶2}  On April 24, 2019, the Ashtabula County Grand Jury indicted Karsikas on the following charges: Tampering with Evidence (Count One), a felony of the third degree in violation of R.C. 2921.12(A)(1); Possession of a Fentanyl-Related Compound (Counts Two, Three and Four), felonies of the fifth degree in violation of R.C. 2925.11(A) and

(C)(11)(a); Possession of Cocaine (Count Five), a felony of the fifth degree in violation of R.C. 2925.11(A) and (C)(4)(a); Possession of Heroin (Count Six), a felony of the fifth degree in violation of R.C. 2925.11(A) and (C)(6)(a); and Obstructing Official Business (Count Seven), a misdemeanor of the second degree in violation of R.C. 2921.31(A).

{¶3} On May 13, 2019, Karsikas was arraigned and entered a plea of not guilty.

{¶4} On August 29, 2019, Karsikas filed a Motion to Suppress. The State filed its Response on September 25, 2019.

{¶5} On October 23, 2019, the trial court denied the Motion to Suppress.

{¶6} The case was tried to a jury between January 6-7, 2020. The jury found Karsikas guilty of all Counts as charged in the Indictment.

{¶7} At sentencing, Counts Two through Six were merged. Karsikas was sentenced to concurrent prison terms of twenty-four months for Tampering with Evidence (Count One), twelve months for Aggravated Possession of Drugs/Possession of a Fentanyl-Related Compound (Count Two), and ninety days for Obstructing Official Business (Count Seven). Karsikas' sentence was memorialized on February 28, 2020.

{¶8} On March 19, 2020, Karsikas filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶9} "[1.] The Trial Court erred when it overruled Appellant's motion to suppress."

{¶10} "[2.] The verdicts of guilty are against the sufficiency and manifest weight of the evidence."

{¶11} "[3.] The Trial Court erred when it allowed hearsay testimony during the motion to suppress hearing."

{¶12} The first and third assignments of error challenge the denial of Karsikas'

2

Motion to Suppress and, therefore, will be addressed first.

{¶13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court [i.e., de novo], whether the facts satisfy the applicable legal standard." *Id.*

{¶14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution establish the right of people to be secure against unreasonable searches and seizures. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. In the context of investigatory stops, "[a]n officer may perform such a stop when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent." *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 9, citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Polk*, 150 Ohio St.3d 29, 2017-Ohio-2735, 78 N.E.3d 834, ¶ 12 (citation omitted). "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" (Citation omitted.) *Hairston* at ¶ 10; *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus ("[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances").

{¶15} In denying the Motion to Suppress, the trial court made the following

relevant findings, based on the hearing testimony of Ashtabula City Police Department Patrolman Christopher DeFina:

> On February 14, 2019, * * * DeFina was engaged in narcotics surveillance, involving Trooper Royko of the Ohio State Patrol. Royko and DeFina were in radio and telephone contact during which Royko reported that an individual in a grey truck entered a known drug house at the corner of Walnut Boulevard and Pennsylvania Avenue for a duration of less than five minutes and then left and was proceeding toward West 8th Street. DeFina observed the vehicle pull into a parking lot next to 1525 West 8th Street, another known drug house. DeFina recognized the truck and the driver as the defendant. He had prior dealings with the defendant involving drugs. DeFina pulled his cruiser behind the defendant's truck, activated his lights, and the defendant ran toward the residence at 1525 West 8th Street. DeFina called to the defendant by name, ordering him to stop, but the defendant continued running toward the residence. These facts are the basis upon which the officer's subsequent actions were taken. * * *
>
> The Court finds that Trooper Royko's report that he observed the defendant enter a known drug house and leave within five minutes, that Patrolman DeFina observed the defendant proceeding immediately toward another known drug house, combined with DeFina's personal knowledge that the defendant was previously involved in drug-related activity, raised a reasonable, articulable suspicion that criminal activity was afoot, justifying DeFina's decision to approach the defendant.

{¶16} In his third assignment of error, Karsikas argues that Patrolman DeFina's testimony regarding Trooper Royko's observations was "textbook hearsay" admitted over the objection of counsel at hearing. "Without Ptl. DeFina testifying about Tpr. Royko's observations there would be no proof about what happened at the supposed drug house justifying the stop." Appellant's brief at 13.

{¶17} We find no error. In the first place, it is well-established that "[a] police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer." *Maumee v. Weisner*, 87 Ohio St.3d 295,

4

297, 720 N.E.2d 507 (1999). "This principle is rooted in the notion that 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" *Id.* citing *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Accordingly, Patrolman DeFina was entitled to rely on the information received by Trooper Royko's regarding Karsikas' activity at a residence known for drug activity.

{¶18} Nor was it necessary for Trooper Royko to testify at the suppression hearing. The Ohio Supreme Court has held that a trial court is not precluded from considering an officer's hearsay testimony regarding information obtained from another source to justify a search or seizure. "'[A]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.'" *Weisner* at 298, citing *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 17 ("the Rules of Evidence do not apply to suppression hearings").

{¶19} The third assignment of error is without merit.

{¶20} In his first assignment of error, Karsikas argues the trial court erred in finding that Patrolman DeFina had a reasonable suspicion to initiate an investigatory stop. Karsikas first claims that "the only testimony presented to the Court to form the basis of the stop was the hearsay testimony (over counsel's objection) of what Tpr. Royko observed." Appellant's brief at 8. As explained supra, there was nothing improper about DeFina relying on Royko's observations in determining to stop Karsikas. Even so, DeFina

was a part of a multi-agency police operation that included Royko's surveillance of the house where Karsikas was observed. DeFina testified: "I was working directly with Trooper Royko, who was working as an undercover unmarked unit watching a house on Walnut Boulevard. * * * We were basically targeting drug dealers and trying to get users coming out of the drug houses to so-called flip on the dealers. I was constantly either on the phone or in radio contact with him."

{¶21} When Trooper Royko reported that a gray truck had stopped at the house for a period of less than five minutes, Patrolman DeFina understood the significance of the observation. As he testified: "When someone goes to a known drug house for a short duration it's usually always * * * generally because a drug transaction was made. The buyer goes, buys the drugs. They don't hang out there, they don't stick around and talk. They buy their drugs and they leave."

{¶22} Moreover, Karsikas is incorrect that the only evidence supporting a reasonable suspicion to stop was Trooper Royko's observations. When he observed the truck, Patrolman DeFina recognized it as belonging to Karsikas whom DeFina has dealt with "throughout [his] career." Not only this, DeFina observed Karsikas' truck pull into the parking lot of another known drug house.

{¶23} We conclude that the totality of these circumstances justifies the stop of Karsikas. It is well-established that a defendant's conduct need not be criminal per se to support a finding of reasonable suspicion. "The relevant inquiry in determining whether reasonable suspicion exists is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." (Citations omitted.) *State v. Sealey*, 11th Dist. Lake No. 2019-L-128, 2020-Ohio-987, ¶ 8; *State v.*

6

*Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 22 (citation omitted).  In this respect, the facts that the Walnut Boulevard residence (as well as the West 8th Street residence) was the focus of a narcotics investigation and that Karsikas visited the residence for less than five minutes are significant for the reasons set forth by Patrolman DeFina.  "'The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted."  (Citation omitted.)  *Bobo*, 37 Ohio St.3d at 179, 524 N.E.2d 489.  The *Bobo* court further noted that an officer's experience in narcotics investigations and, in light of that experience, conduct by a defendant consistent with drug activity supports a finding of reasonable suspicion.  *Id.* 179-180; *Hairston*, 156 Ohio St.3d 353, 2019-Ohio-1622, 126 N.E.3d 1132, at ¶ 12 ("[a]n officer's experience with criminal activity in an area and an area's reputation for criminal activity are factors we have found relevant to the reasonable-suspicion analysis").

{¶24} Finally, investigatory stops based on suspected drug activity have often been upheld on facts similar to these.  *See, e.g., State v Binford*, 9th Dist. Summit No. 22038, 2004-Ohio-5176, ¶ 11 ("based on their experience and training, it is reasonable to conclude that the officers could suspect illegal activity from anyone who entered and exited a known drug house for such a short duration"); *State v. Miller*, 117 Ohio App.3d 750, 758, 691 N.E.2d 703 (11th Dist.1997) ("appellate courts have held that a reasonable suspicion does exist when the defendant's actions are consistent with the profile created by the analysis of the drug deals commonly transacted in that area"); *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2-3 (reasonable suspicion existed where an experienced officer conducting surveillance in an area known for drug activity

observed a vehicle pull into a hotel parking lot and, while the occupant remained in the vehicle, persons from the hotel came to the car and returned to the hotel within a few minutes).

{¶25} We do not find the case of *State v. Knight*, 5th Dist. Licking No. 04CA24, 2004-Ohio-7274, cited by Karsikas, to be persuasive. In *Knight*, officers observed the defendant enter a house that they "suspected" was a drug house. The court of appeals found this insufficient to establish a reasonable suspicion. The court noted that there was "no indication that the house in question was being used to sell drugs at or near the point in time in which appellee entered the home" or "other indications of illegal drug activity than one known drug user going to the house and only staying a few minutes." *Id.* at ¶ 14. In the present case, the house in question was the target of a multi-agency narcotics investigation. Karsikas counters that there was no evidence as to why the Walnut Boulevard or West 8th Street residences were the subject of investigation. For the purposes of evaluating the reasonableness of Patrolman DeFina's action in stopping Karsikas, the details of the underlying investigation are not crucial. A known drug house under surveillance is a fact on which suspicion may be based, rather than a vague hunch as appears to be the case in *Knight*. DeFina knew that the Walnut Boulevard residence was targeted as a known drug house and the suspect, known to DeFina, entered the residence, left after a few minutes, and went to another known drug house. As the *Knight* court acknowledged, "each case must be considered individually and there are no specific requirements or formulas to find reasonable and articulable suspicion." *Id.* In the present case, knowledge that the residences under surveillance were known drug houses is sufficient to establish reasonable suspicion.

{¶26} The first assignment of error is without merit.

{¶27} In the second assignment of error, Karsikas challenges the sufficiency and weight of the evidence supporting his convictions.

{¶28} The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶29} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.3d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

9

{¶30} At trial, the following pertinent testimony was presented on behalf of the State:

{¶31} Trooper Michael Royko of the Ohio State Highway Patrol testified that, on February 14, 2019, he was working as part of a drug task force doing surveillance on known locations. At about 1:06 p.m., he observed a middle-aged white male in an older GMC pickup truck stop at the house at 1724 Walnut Boulevard. The driver exited the vehicle and went into the house for a short period of time ("only several minutes"), returned to his vehicle and drove away. Royko radioed a description of the vehicle, including its registration, which description was received by Patrolman DeFina.

{¶32} Patrolman DeFina testified that, on February 14, 2019, he was assisting Trooper Royko by interdicting vehicles relayed to him as "coming from houses of known drug activity." DeFina located the pickup truck observed by Royko as it was "pulling into a parking lot next to 1525 West 8th Street" which was another known drug house under surveillance. DeFina entered the parking lot and activated his emergency lights. Karsikas exited the vehicle and ran toward the house. DeFina called for Karsikas to stop and Karsikas shouted back that he did not do anything.

{¶33} There was another man, Tyler Johnson, on the porch of 1525 West 8th Street. Karsikas ran onto the porch with Patrolman DeFina in pursuit. Karsikas yelled at Johnson to move and let him in. Karsikas tried opening the door and, then, when it would not open, "he reached behind [Johnson] in an open area of the porch." At this point, DeFina "grabbed him and took him to the ground and arrested him."

{¶34} Johnson appeared startled by the commotion and stood still. At the same time Patrolman DeFina was arresting Karsikas, another officer ordered Johnson off the

porch and to hold his hands where they could be seen.

{¶35} After Karsikas was handcuffed, a K9 officer searched Karsikas' vehicle and alerted to the presence of narcotics. Patrolman DeFina searched the vehicle and Karsikas' person but did not find narcotics. He returned to the porch and "found a small bindle on the porch from right below where Mr. Karsikas was reaching."

{¶36} Scott Miller, a forensic scientist at the Ohio Bureau of Criminal Investigation, conducted a chemical analysis of the contents ("a brown and white substance") of the aluminum foil recovered from the porch at West 8th Street. The contents weighed 0.24 grams and comprised a mixture of cocaine, heroin, acetyl fentanyl, fentanyl, and carfentanil.

{¶37} The defense did not present witnesses but introduced records from Ashtabula Municipal Court indicating that Johnson had two convictions of Possessing Drug Abuse Instruments, one conviction of Theft, and one conviction of Criminal Trespassing.

{¶38} To convict Karsikas of Tampering with Evidence, the State was required to prove that he, "knowing that an official proceeding or investigation is in progress," did "[a]lter, destroy, conceal or remove any * * * thing, with purpose to impair its value or availability in such proceeding or investigation." R.C 2921.12(A)(1).

{¶39} To convict Karsikas of Aggravated Possession, the State was required to prove that he did "knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A).

{¶40} To convict Karsikas of Obstructing Official Business, the Sate was required to prove that he, "without privilege to do so and with purpose to prevent, obstruct, or delay

11

the performance by a public official of any authorized act within the public official's official capacity," did "any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A).

{¶41} Karsikas challenges the evidence as to whether the bindle found on the porch could be linked to him. "The State offered no evidence as to how the drugs got on the porch. The State asked the jury to infer Appellant bought the drugs, to infer he had them on his person when he left his truck, to infer he removed them from his pocket on the porch and that he did so with the intent to hinder an investigation into a drug purchase that no evidence produced proved even happened." Appellant's brief at 12. (The charge of Obstructing Official Business, based on Karsikas' flight from his vehicle after Patrolman DeFina initiated the stop, is not implicated by this challenge.)

{¶42} "That the defendant exercised dominion or control over drugs may be indirectly proven, through circumstantial evidence, even when the defendant is not present when the drugs are found." (Citation omitted.) *State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 71. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" (Citation omitted.) *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶43} Here, there is abundant circumstantial evidence sufficient to prove Karsikas' possession of the narcotics found on the porch. Karsikas was observed visiting for a few

minutes, i.e., in a manner consistent with transacting drugs, a residence under surveillance for drug activity and proceeding to another such residence. Karsikas fled when confronted by police. A K9 officer alerted to the presence of drugs in his vehicle. Drugs were found on the porch where Karsikas was arrested in a location where Karsikas was seen "reaching around" another person on the porch. There are many examples of convictions requiring evidence of possession being sustained based solely on comparable circumstantial evidence. *E.g., State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 31; *State v. Gervin*, 3d Dist. Marion No. 9-15-51, 2016-Ohio-5670, ¶ 33; *State v. Sarro*, 7th Dist. Columbiana No. 13 CO 39, 2015-Ohio-5470, ¶ 42-43.

{¶44} In particular, we note the evidence of Karsikas' flight from his truck to the residence. "Indeed, an accused's "'flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.""' (Citations omitted.) *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 167. In the present case, Karsikas' flight supports a finding that he knowingly removed or concealed the bindle to impair its value in an investigation.

{¶45} With respect to the manifest weight of the evidence, the only conflicting evidence is the presence of Johnson on the porch, an individual with a drug history also in proximity to the location of the bindle. Here we note that the weight to be given to conflicting evidence, as well as the credibility of witnesses in general, is primarily for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We do not find the attribution of the bindle to Karsikas

13

rather than Johnson such a miscarriage of justice that the convictions must be reversed. Patrolman DeFina testified that Karsikas' flight and arrest happened "in a matter of seconds." Johnson appeared startled and, unlike Karsikas, DeFina did not notice Johnson make any peculiar movements with his hands. Karsikas, after trying unsuccessfully to open the door, was seen reaching around Johnson in the direction the bindle was found.

{¶46} The second assignment of error is without merit.

{¶47} For the foregoing reasons, Karsikas' convictions are affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.