[Cite as *State v. Hinkston*, 2020-Ohio-6903.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2020-03-012 |
| | : | O P I N I O N |
| - vs - | | 12/28/2020 |
| | : | |
| DAMON PERRY HINKSTON, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY OF COMMON PLEAS
Case No. 2019CR000724

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellant

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for appellee

**HENDRICKSON, P.J.**

{¶1} Appellant, the state of Ohio, appeals a decision of the Clermont County Court of Common Pleas granting a motion to suppress evidence filed by appellee, Damon Hinkston. For the reasons discussed below, we reverse the trial court's decision.

{¶2} Hinkston was charged with possession of a fentanyl compound and having weapons while under a disability. The charges were the result of an investigation that began

with a police stop of a vehicle in which Hinkston was a passenger. Hinkston moved to suppress the evidence discovered as a result of the stop, arguing there was no basis for police to stop the vehicle.

{¶3} At the suppression hearing, Police Officer Corey Herren testified that he has 19 years of law enforcement experience and is currently a canine handler for the Williamsburg Police Department. On June 10, 2019, Officer Herren was conducting surveillance on a known drug house at around 11:30 in the evening. He testified that Williamsburg is a small jurisdiction and he was familiar with the residences in the area with a record of drug activity and it was his job to patrol and survey those areas frequently.

{¶4} Officer Herren testified that prior to the traffic stop in this case, there had been "70 some" different traffic stops where drugs were retrieved from automobiles after leaving the house he was surveilling. He also testified that the house was confirmed as a drug house when controlled buys were conducted by the drug unit. A search warrant was conducted and ultimately the owner was federally indicted on drug charges.

{¶5} On the date in question, Officer Herren observed a vehicle pull in the driveway of the drug house. The car was not from the area and when Herren ran the registration, he discovered that the vehicle was registered to a deceased male. A male and female exited the vehicle and entered the house. Shortly after, the pair came out of the house, got into the vehicle and left. Herren testified that based on his training and experience, the behavior was suspicious because of the history of the house, the fact that the car was from out of the area, and the actions of the vehicle occupants.

{¶6} Officer Herren followed the vehicle for about a mile. He testified that he believed the vehicle was in violation of Ohio traffic laws because he knew the owner was deceased and could not be operating the vehicle. Officer Herren further stated that he had previous incidents with the same type of scenario of a vehicle registered to a deceased

person and frequently the vehicles were driven by people who were not supposed to be in the vehicle at all. While following, Officer Herren noticed "a lot of activity" in the vehicle. He described the activity as the male passenger "moving around quite a bit," moving side to side, and the passenger appeared to be trying to hide something. Officer Herren activated his lights and siren and stopped the vehicle.

{¶7} When the vehicle was stopped, Officer Herren noticed the female driver appeared "quite a bit" more nervous than typical for a traffic stop and the male passenger would not make eye contact. The driver initially gave Officer Herren her twin sister's identification and the officer was suspicious because the identification did not match his observations of the driver. Officer Herren then asked for a Social Security number which the driver provided him. As Herren was verifying the driver's identification, other officers arrived, and these officers took over the traffic stop duties while Officer Herren received consent to run his drug dog around the vehicle. The canine indicated a positive response on the front driver and passenger doors. The driver and passenger were removed from the vehicle and the vehicle was searched.

{¶8} A firearm was discovered in the back seat, behind but within reach of the passenger's seat with the butt of the handgun sticking out. Officers discovered baggies in the center console of the vehicle which contained residual drugs inside. Officers also discovered a black bag that contained several items, including a needle cap, five rounds of ammunition of the same caliber as the firearm, and a key that belonged to Hinkston's mother.

{¶9} During the stop, officers identified the driver as Sapphire Miracle and determined that she had a suspended driver's license. Officers also discovered that there was a request for Hinkston to be detained for investigation of a burglary offense. Hinkston was arrested, and during booking procedures at the jail, fentanyl was discovered in

Hinkston's wallet. As mentioned above, Hinkston was charged with possession of a fentanyl compound and with having a weapon while under a disability.

{¶10} After considering the testimony at the suppression hearing, the trial court determined that Officer Herren did not have probable cause to make the traffic stop based on R.C. 4549.11(A), the statutory provision that prohibits an owner from driving a vehicle registered to a previous owner. The trial court also determined that there was not a reasonable articulable suspicion of criminal activity that allowed Officer Herren to stop the vehicle based on the surrounding circumstances. Because it determined there was no legal basis for the vehicle stop, the trial court granted Hinkston's motion and suppressed all evidence arising out of the stop.

{¶11} The state of Ohio now appeals the trial court's decision to grant the suppression motion and raises the following assignment of error for our review:

{¶12} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS.

{¶13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, ¶ 16. However, after accepting the trial court's factual findings, the appellate court must determine the legal questions independently, without deference to the trial court's decision. *Id.*; *Burnside* at ¶ 8.

{¶14} Both the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures by the government. *State v. Martin*, 12th Dist. Warren No. CA2018-09-105, 2019-Ohio-2792, ¶ 14. This protection includes unreasonable automobile stops. *Bowling Green*

*v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11.

{¶15} Ohio recognizes two types of lawful traffic stops, each requiring a different constitutional standard. *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 6-7; *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 45. One is a typical noninvestigatory stop where an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769. The second type of stop is an investigative or "*Terry*" stop, which occurs where an officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868.

{¶16} On appeal, the state argues the vehicle stop in this case was supported by both probable cause based on a traffic violation and as an investigatory stop based on a reasonable, articulable suspicion of drug activity. Because we find it dispositive of the appeal, we begin with the state's argument that Officer Herren had a reasonable articulable suspicion for the stop based on his observations.

{¶17} A brief, investigative stop does not require as much probability of criminal activity as the probable cause required for an arrest. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868. Because the extent of the intrusion upon a suspect's protected liberty interests is less in a brief, investigative stop, the amount of suspicion required to justify that intrusion is correspondingly less. *State v. Letner*, 2d Dist. Montgomery No. 24277, 2011-Ohio-3732. Only a reasonable, articulable suspicion of criminal activity is required. *Id*.

{¶18} While the concept of reasonable and articulable suspicion has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31-33. To determine whether an officer had reasonable

suspicion to conduct a *Terry* stop, the "totality of circumstances" must be considered and "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, (2002), quoting *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690 (1981); *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, ¶ 19-22.

{¶19} In this case, Officer Herren observed an out-of-the-area vehicle pull into a known drug house late at night. The passengers exited the vehicle, entered the house and returned shortly thereafter. Herren determined the vehicle was registered to a deceased person and knew from experience that often drivers of such vehicles did not have permission to use the vehicle. While following the vehicle, the passenger made movements that to Officer Herren indicated the passenger was trying to hide something.

{¶20} The Ohio Supreme Court has determined that an officer's experience in narcotics investigations, combined with conduct by a defendant consistent with drug activity supports a finding of reasonable suspicion. *See State v. Bobo*, 37 Ohio St.3d 177, 179-180 (1988). Likewise, this court has previously determined that reasonable articulable suspicion existed to extend a search based on a suspect's activity at a known drug house. *State v. Sexton*, 12th Dist. Butler No. CA2019-08-133, 2020-Ohio-4179, ¶ 34 (active investigation into drug complaints at house, citizen complaints of defendant's brief activity at house, along with nervous behavior created reasonable articulable suspicion).

{¶21} Similarly, other Ohio appellate courts have determined reasonable articulable suspicion existed under circumstances involving suspicious activity at a known drug house. *See State v. Karsikas*, 11th Dist. Ashtabula No. 2020-A-0017, 2020-Ohio-5058, ¶ 20-25.

(suspect with prior drug related interactions with police stopped and entered known drug house for five minutes, then parked next to another known drug house); State *v. Miller*, 117 Ohio App.3d 750, 759 (11th Dist.1997) (defendant's stop at house suspected of drug activity for brief period, consistent with other drug transactions at residence); *State v. White*, 2d Dist. Montgomery Case No. 18731, 2002-Ohio-262 (vehicle pulled into motel parking lot without occupants exiting vehicle, and two individuals exited motel with one entering vehicle while other stood on corner); *State v. Binford*, 9th Dist. Summit No. 22038, 2004-Ohio-4976, ¶ 11 (reasonable articulable suspicion where defendant entered and exited a known drug house for a short duration). Accordingly, we find the facts in this case, when viewed through the eyes of a reasonable police officer, provided reasonable, articulable suspicion to stop the vehicle for further investigation.

{¶22} Hinkston argues that there was not reasonable articulable suspicion for the vehicle stop because there was uncertainty in the officer's testimony regarding the timing of the homeowner's arrest, the record was silent as to where the vehicle was from, and the state failed to explain suspicious nature of driving a deceased person's car. Hinkston further argues that it is not uncommon for a person to be out at 11:30 at night and the court did not find the officer's testimony that Hinkston was trying to hide something credible.

{¶23} Although it is not clear from Officer Herren's testimony when the owner of the house was arrested, it is evident from the record that the house was a known drug house at the time of these events. Numerous drug arrests had occurred based on stops of people leaving the home. The unknown timing of the owner's arrest does not detract from the nature of the residence as a drug house. In addition, with regard to ownership of the vehicle, Officer Herren himself discussed the suspicious nature of a person driving an automobile registered to a deceased person and explained that often in such circumstances the person did not have permission to drive the vehicle.

{¶24} The trial court noted in its decision that Officer Herren was not able to describe "any facts, other than his observation that the passenger moved "from side to side'" as a basis for the officer's opinion that the passenger appeared to be trying to hide something. However, the trial court's statement discusses the basis for Officer Herren's suspicion that the passenger was trying to hide something and does not discredit the officer's testimony that the passenger was making some type of movements the officer found suspicious. This observation was based on the officer's experience and was just one of the factors in creating reasonable, articulable suspicion.

{¶25} Finally, although none of the facts observed by Officer Herren in this case, including stopping at a house late at night, are criminal, this does not detract from the totality of the circumstances creating reasonable articulable suspicion. A determination of reasonable, articulable suspicion must be based on the collection of factors, not on the individual factors themselves. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 19; *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 6-7.

{¶26} Moreover, a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, at ¶ 19-22. In permitting detentions based on reasonable suspicion, "*Terry* accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673 (2000). When determining whether reasonable suspicion exists, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. *Karsikas*, 2020-Ohio-5058 at ¶ 23. "Behavior and circumstances that are noncriminal by nature may 'be unremarkable in one instance * * * while quite unusual in another.'" *Hawkins*, 158 Ohio St.3d 94 at ¶ 23, quoting *U.S. v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744 (2002). Therefore, "[a]n officer is 'entitled to make an assessment of the situation in light of his specialized training and familiarity with the

customs of the area's inhabitants.'" *Id.*

{¶27} In conclusion, we find that the vehicle stop in this case was supported by reasonable, articulable suspicion. Therefore, the trial court erred in granting Hinkston's motion to suppress evidence. Accordingly, the judgment of the trial court is reversed and this case is remanded for further proceedings.

{¶28} Judgment reversed.

RINGLAND and M. POWELL, JJ., concur.