[Cite as *State v. Harris*, 2024-Ohio-5807.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,      :

                          No. 113600

    v.                       :

STEVEN HARRIS, SR.,               :

    Defendant-Appellant.     :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** December 12, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654918-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kyle Dillon, Assistant Prosecuting Attorney,
*for appellee.*

Russell S. Bensing, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Steven Harris, Sr., appeals his conviction for drug-related offenses and having weapons while under disability. The State, in part, concedes some errors

that occurred during the proceeding below. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} Cleveland police detectives received information that Harris was selling drugs in the south Slavic Village area of Cleveland, Ohio. A confidential informant set up two controlled buys from Harris. Detectives verified Harris's phone number, as used by the informant, and his residency at 7820 Worley Avenue. The informant first called Harris to set up a purchase of heroin and crack. On the first occasion, police officers surveilling the 7820 address witnessed Harris leave his house with another individual, identified as Anthony A. Jackson but known by the name "Ron." The informant described Jackson as Harris's runner. After a short conversation between the two men, Jackson briefly entered the home located at 7824 Worley Avenue. He then drove to meet the informant, who completed the transaction. Jackson immediately returned to Harris's home at the 7820 address to meet up with Harris. Detectives secured the drugs purchased by the informant, which tested positive for cocaine, heroin, fentanyl, 4-ANPP (a direct precursor to fentanyl and fentanyl analogues), and Tramadol (generic version of an opioid painkiller).[1]

{¶ 3} A few weeks later, detectives using the same informant initiated a second buy of heroin-fentanyl. The informant again called Harris on the same

---

[1] *See United States v. Tobias*, 101 F.4th 473, 477 (6th Cir. 2024) (noting that 4-ANPP is a direct precursor to fentanyl and some fentanyl analogues); *United States v. Motley*, 89 F.4th 777, 780 (9th Cir. 2023), citing *Schedules of Controlled Substances: Placement of Tramadol Into Schedule IV*, 79 Fed. Reg. 37,623, 37,623 (July 2, 2014) (noting that "Tramadol is a centrally acting opioid analgesic . . . .").

phone number to set up the meeting. Surveilling officers observed Harris leaving his 7820 address and directly proceed to the meeting with the informant, who purchased the same substance as earlier. Officers secured the drugs, which in their experience appeared to be heroin based on the texture and color of the substance and that it resembled the material from the first controlled transaction. The detective did not receive the results of the lab testing at the time the affidavit in support of a search warrant for the 7820 address was filed, a fact contained in the affidavit itself. Police executed the search warrant and found a significant quantity of illicit drugs and other contraband including firearms, which Harris was legally precluded from possessing due to a prior conviction. The lab results for drugs obtained from the second buy indicated the presence of fentanyl and 4-ANPP, but those results came after the search warrant was executed.

{¶ 4} A jury found Harris guilty of four counts of drug possession in violation of R.C. 2925.11(A) (two of which are third-degree felonies, one is a fifth-degree felony, and the last is a first-degree felony), possession of criminal tools in violation of R.C. 2923.14(A), a fifth-degree felony, having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony, and various forfeiture specifications attendant to those counts.

{¶ 5} During the sentencing hearing, the trial court stated:

Before imposing sentence[,] the Court notes for the record that it has considered the record itself, the statements made here today, the letter submitted by the defendant's wife and codefendant, the defendant's prior record, and the nature of the offenses.

The Court must and has formulated its decision based upon the overriding principles and purposes of felony sentencing, namely to protect the public from future criminal acts by the defendant or others and to punish the defendant using the minimum sanctions that the Court determines accomplishes those purposes without imposing an unnecessary burden on the State or local government resources under Revised Code 2929.11(A). To achieve these purposes, the Court has considered the need for incapacitation, deterrence, and rehabilitation.

The Court must and has also considered the seriousness and recidivism factors relevant to the offense and the offender pursuant to Revised Code 2929.12. These factors are very unhelpful to the defendant.

The Court must and has determined that the sentence being imposed does not demean the seriousness of the offenses and the impact it had on any potential victims in the community and is consistent with other similar offenses committed by comparable offenders.

Finally, of course, the sentence is not based upon any impermissible or irrelevant factors including but not limited to race, sex, age, national or ethnic origin, sexual orientation, gender identity, or religion of the defendant.

Tr. 1723:14-1724:25.

Thus, the trial court expressly considered the principles and purposes of sentencing under R.C. 2929.11 and the relevant sentencing factors under R.C. 2929.12. Notably, the trial court did not consider, discuss, or make any findings under R.C. 2929.14(C)(4).

{¶ 6} In the final entry of conviction, the trial court imposed an aggregate sentence of 13 years, running the 11-year mandatory sentence on the first-degree felony consecutive to each of the two 12-month sentences imposed on the third-degree felony drug possession counts (one of which would eventually merge with the first-degree felony). All other counts were concurrently imposed. Notably, the trial

court failed to impose a non-life indefinite sentence for the qualifying first-degree felony. At the sentencing hearing, however, the trial court only imposed one of the 12-month terms for the third-degree felony offenses to be served consecutive to the 11-year definite term on the qualifying first-degree felony offense. Thus, the entry differed from that which occurred.

{¶ 7} Before trial, Harris moved to suppress the evidence obtained through the search of the 7820 address, claiming that the affidavit in support of the warrant was not sufficient to establish a nexus between the two controlled-buy transactions and Harris's home. In this appeal, Harris advances four assignments of error claiming that the trial court (1) erred in denying the motion to suppress; (2) erred by failing to merge the third-degree felony drug possession in Count 6 with the first-degree drug possession in Count 4; (3) failed to make any consecutive-sentencing findings under R.C. 2929.14(C)(4); and (4) imposed a sentence that was contrary to the sentence imposed at the sentencing hearing. The assignments of error will be addressed out of order for ease of discussion.

{¶ 8} In the first assignment of error, Harris claims that the trial court erred in denying the motion to suppress because the affidavit in support of the warrant did not establish a nexus between Harris's home at 7820 Worley Avenue and the controlled buys conducted by surveilling detectives. Harris's argument is focused on the Fourth Amendment of the federal Constitution.

{¶ 9} Under Ohio law, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When

considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). We generally defer to the trial court's findings of fact. *Id.* Notwithstanding, an appellate court must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The trial court, in this case, largely focused on the four corners of the affidavit in support of the search warrant.

{¶ 10} The constitutional prohibition against unreasonable searches and seizures protects the "'right of the people to be secure in their . . . houses' and requires that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. White*, 990 F.3d 488, 490 (6th Cir. 2021), quoting U.S. Const. amend. IV. When issuing courts are reviewing affidavits in support of a search warrant, evidence must demonstrate that "there is a fair probability that contraband or evidence of a crime will be found in a particular place" in light of the totality of the evidence presented. *Id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Generally, the probable cause inquiry in cases involving a known or suspected drug dealer is a fact-intensive one, which conforms "'to the Supreme Court's general rejection of 'rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach' when

evaluating probable cause." *United States v. Brown,* 828 F.3d 375, 384 (6th Cir. 2016), quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013).

{¶ 11} Harris claims that the affidavit in support of the search warrant was deficient because the detectives did not include evidence of numerous visits to the house by drug buyers or because the detectives did not rifle through his trash looking for evidence. Harris claims that in order to demonstrate a "fair probability" that contraband or evidence exists in his house, the State needs evidence of

> surveillance which establishes frequent, short visits of numerous people to the premises can give rise to an inference of drug-dealing in the house. *State v. Williams*, 2023-Ohio-4344 (6th Dist.); *State v. Karsikas*, 2020-Ohio-5058 (11th Dist.)[.] Trash pulls resulting in the discovery of evidence of drug trafficking can also provide the necessary nexus for a warrant. *State v. Rieves*, 2018-Ohio-955 (8th Dist.); *State v. Craine*, 2024-Ohio-2501 (10th Dist.)[.] In fact, even a single trash pull can furnish probable cause for a search of the residence. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483.

According to Harris, because none of that evidence was presented in the affidavit in this case, then necessarily the State's evidence in support of probable cause to justify the issuance of the search warrant was insufficient.

{¶ 12} Harris's reliance on those above-mentioned cases as creating the minimum to establish probable cause is misplaced. Although that evidence was sufficient to justify the issuance of search warrants in those cases, it is not necessarily required in all cases. Such a conclusion would amount to the rigid, bright-line test generally avoided by the Supreme Court. *See Harris*. And regardless, the authority cited by Harris does not stand for the proposition that all searches of a known or suspected drug dealer's home are required to be based on evidence of numerous

sales inside the house or that obtained from trash pulls. That was merely the evidence presented in those particular cases, as the courts noted in resolving the fact-intensive inquiry. Given the limited argument, we need not expand on this part of the discussion any further.

{¶ 13} In this case, officers conducted two controlled buys of illegal narcotics from Harris. The first was admittedly less compelling as to the probability of illicit contraband being discovered in the 7820 address than the second. But coupling both buys together, there was sufficient evidence demonstrating more than a mere suspicion that officers would find illicit contraband at 7820 Worley Avenue. On two occasions, the reliable informant called Harris's phone directly and arranged to purchase heroin-fentanyl and crack cocaine. On both occasions, Harris was seen exiting his house at 7820 Worley Avenue and either sending someone (who also exited that house) or appearing himself to complete the drug sale to the informant. After the first controlled transaction, the confidential, reliable informant told officers that the man he met was a runner for Harris. Although the first buy included a short detour to 7824 Worley Avenue by the runner, who ultimately sold the drugs to the informant, the second buy was more direct with Harris seen exiting his house, driving straight to and from the transaction, and returning to the 7820 address. That second controlled buy is the primary foundation of the search warrant given the issues with the first transaction — that the runner detoured before meeting the confidential informant, which indicates the drugs may not have been stored at the 7820 address.

{¶ 14} In similar situations to the second transaction, federal courts have upheld the validity of the warrant to search a drug dealer's premises based on the "common sense" inference that drugs would be found in the home, essentially finding that evidence of the defendant leaving the house, directly proceeding to the site of the drug buy, and then immediately returning to the same house demonstrates that the house was essentially used as the defendant's base of operations. *White*, 990 F.3d 488, at 490 (warrant supporting the search of a house was upheld on a single controlled buy in which the informant called the defendant to buy drugs, the defendant left the house, sold the drugs to the informant, and returned to the same house); *White* at 490-491 (noting, in upholding the validity of the warrant to search a house, that "the informant saw a person exit the home, provide a buyer with a 'large quantity of cocaine in a plastic bag,' and return inside"); *see also United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019); *United States v. Stearn*, 597 F.3d 540, 564 (3d Cir. 2010); *United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007). Harris has not discussed nor given any reasons to distinguish that line of authority, especially as it pertains to the second controlled buy. Harris's avoidance of discussing the totality of the case authority surrounding the Fourth Amendment and controlled-buy transactions limits our review.

{¶ 15} And finally, in a cursory manner, Harris claims that because the testing on the drugs obtained during the second controlled buy had not been returned at the time the officers obtained the search warrant, the events of the second controlled buy are not relevant to the warrant. Harris did not present this

argument to the trial court in his motion to suppress and, therefore, is raising a new argument not addressed below.

{¶ 16} Nevertheless, Harris failed to present any authority or analysis demonstrating viability to his argument. He instead simply presumes that the official testing results of the second drug buy were required to create a nexus between the controlled transactions and his sale of drugs from the 7820 address. He has not offered any authority to support that notion, and given the limited argument, we are reluctant to weigh in on what could appear to create a rigid rule. It is not the role of an appellate court to flush out or create legal analysis on behalf of one of the parties. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); *see also Russo v. Gissinger*, 2023-Ohio-200, ¶ 28 (9th Dist.), quoting *State v. Taylor*, 1999 Ohio App. LEXIS 397 (9th Dist. Feb. 9, 1999) ("'It is the duty of the appellant, not [an appellate court], to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.'").

{¶ 17} In reviewing the facts in the affidavit, after the informant conducted the second transaction, a detective, who has 19 years of law-enforcement experience and five years specifically focusing on drug crimes, testified that he took possession of the same drug material as the first time, which had already been tested. In addition, in his experience, the material looked like the heroin-fentanyl mix as requested by the informant. In light of that, it cannot be said that a drug test is always required before obtaining a search warrant when there is some evidence that

a drug sale took place. In light of the limited arguments presented, we find no merit to the first assignment of error.[2]

{¶ 18} On the remaining three assignments of error, we note that the State concedes two issues. First, the State concedes that the drug possession Counts 4 and 6 merged under *State v. Pendleton*, 2020-Ohio-6833, ¶ 20, which held that "the imposition of two punishments for the same, singular quantity of drugs violated the Double Jeopardy protections of the Ohio and United States Constitutions." In this case, like *Pendleton*, the State aggregated the drugs charged under Count 6 into the total quantity of drugs that created the first-degree, qualifying felony offense as charged under Count 4. Thus, Harris's sentences for Counts 4 and 6 are on allied offenses of similar import as a matter of law. *Id.* Those two sentences on Counts 4 and 6 are hereby vacated, and the matter is remanded for sentencing anew under R.C. 2929.14, and if applicable under R.C. 2929.141, after the State elects on which count to proceed.

{¶ 19} Second, with respect to concessions, the State agrees that the trial court's journalized sentencing entry does not comport with the sentence imposed at the sentencing hearing because the trial court only imposed one of the 12-month terms on the third-degree felony offenses to be served consecutively to the 11-year term on the first-degree drug possession offense. In the final entry of conviction,

---

[2] This is not to say that we are necessarily agreeing with the State that the evidence in this case would always support a finding of probable cause for the issuance of a search warrant. It is more a reflection of the limited arguments presented and review of the general case law on this topic.

two 12-month terms were imposed consecutive to the 11-year mandatory term on the first-degree qualifying felony. This issue, however, is directly impacted by the third assignment of error, in which Harris claims that the trial court failed to make any consecutive-sentencing findings under R.C. 2929.14(C)(4). We agree with Harris. As a result, we need only consider the findings question because the remedy is a remand to address the consecutive-sentencing question anew.

{¶ 20} In order to impose consecutive sentences under R.C. 2929.14(C)(4), a trial court must consider and find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." The trial court also must make at least one of the findings set forth under R.C. 2929.14(C)(4)(a)-(c). "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing" and "incorporate its statutory findings into the sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, ¶ 29.

{¶ 21} The trial court failed to render any findings at the sentencing hearing or in the final entry of conviction. The trial court's sole discussion pertaining to the felony-sentencing requirements was limited to a discussion focusing on R.C. 2929.11 and 2929.12. We acknowledge that there is some overlap in the principles of felony sentencing under R.C. 2929.11 and 2929.14(C)(4). For example, the former provides that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender . . . ," while the first

finding of the latter section provides that consecutive sentences can be imposed "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender." That is but one element, however, and in this context, it is not clear that the trial court was considering the R.C. 2929.14(C)(4) factors rather than reciting, nearly verbatim, the principles of sentencing under R.C. 2929.11. It is well settled that R.C. 2929.11 does not apply to consecutive sentencing. *See, e.g., State v. Gwynne*, 2019-Ohio-4761, ¶ 17 (holding that "R.C. 2929.11 and 2929.12 both clearly apply only to individual sentences." (Emphasis deleted.)).

{¶ 22} The State essentially argues that the findings can be discerned from the record based on the trial court's reference to R.C. 2929.11 and 2929.12. *See State v. Bonnell*, 2014-Ohio-3177, ¶ 29 ("[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."). Although appellate courts may discern the findings are made from the record, that divination must be derived from the record as it pertains to the trial court's exercise of its discretionary authority to impose consecutive sentences under R.C. 2929.14(C)(4). *State v. Jackson*, 2024-Ohio-583, ¶ 4-9 (8th Dist.). Here, the trial court did not consider the findings under R.C. 2929.14(C)(4) in exercising its discretion to impose consecutive sentences. It merely cited the general sentencing provisions from R.C. 2929.11 and 2929.12. That there is some overlap between R.C. 2929.14(C)(4) and the sentencing considerations or factors does not dispel what is

apparent from the record, that trial court did not consider R.C. 2929.14(C)(4) when imposing the sentences to be consecutively served.

{¶ 23} The imposition of consecutive service of the underlying sentences on all counts is reversed, and the matter remanded for the purpose of conducting a new sentencing hearing to address the consecutive-service question with respect to all the individual sentences imposed and to be imposed on remand. *See State v. Nashe*, 2024-Ohio-3400, ¶ 73 (8th Dist.); *see also State v. Banks*, 2023-Ohio-4655, ¶ 15 (8th Dist.), citing *State v. Tolbert*, 2023-Ohio-532, ¶ 10 (8th Dist.), *State v. Vargas*, 2015-Ohio-2856, ¶ 15 (8th Dist.), and *State v. Nia*, 2014-Ohio-2527, ¶ 28 (8th Dist.). Although the trial court is to consider the consecutive-sentencing issue anew, the individual sentences imposed on each offense, except for Counts 4 and 6 that are hereby vacated as discussed above, are now final and cannot be revisited on remand. If necessary, the findings under R.C. 2929.14(C)(4) must be included in the record and in the final entry of conviction.

{¶ 24} As a result of the foregoing, we affirm in part, reverse in part, and remand for further proceedings. The trial court did not err by denying the motion to suppress based on the fact that the defendant failed to demonstrate that the evidence demonstrating probable cause from the sequence of events and observations presented in the affidavit supporting the search warrant was insufficient. Nevertheless, the sentences imposed on Counts 4 and 6 are contrary to law based on the State's concession that those two offenses should have merged. Both of those sentences are vacated, and the matter remanded for the purposes of

the State's election on resentencing. And finally, the consecutive sentences on all counts are reversed. At the resentencing hearing, the court must impose a sentence on either Count 4 or 6 (at the State's discretion) and then, if applicable, make the findings under R.C. 2929.14(C)(4) and include those in a new final entry of conviction.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN T. GALLAGHER, J., CONCUR